ASHTON, (LYNCH v.) See Case No. 8,636.

## Case No. 584.

ASHTON v. McKIM et al.

[4 Cranch, C. C. 19.][1]

Circuit Court, District of Columbia. May Term, 1830.

SET-OFF — NEGOTIABLE INSTRUMENT — PAROL AGREEMENT TO ACCEPT SERVICES IN PAYMENT.

At the time of the complainant's giving the single bill, it was expected and understood by both parties, that the whole amount might be satisfied by the services of the complainant, and that such services, as far as they should be actually rendered, should be set off against the bill. Services, to an indefinite extent, the value of which was not ascertained, were admitted to have been performed; and it was not denied that the complainant was always ready and willing to perform all that should be required of him. Held, that the complainant had a right, under the original contract, to have the value of those services ascertained and set off against the bill. Injunction continued till final hearing.

In equity. Bill for an injunction to stay proceedings upon a judgment at law upon a single bill for $766.65 given by the complainant to J. & P. Turner, and by them assigned to the defendant McKim. Upon the coming in of the answers of the defendants,

Mr. Lear, for the defendants, moved to dissolve the injunction, and Mr. Tabbs, for the complainant, filed exceptions to the answer of the defendants J. & P. Turner.

THE COURT (nem. con.) overruled the exceptions; and as to the matter of equity in the bill,

CRANCH, Chief Judge, delivered the opinion of the court. The next questions are, 1st. Whether there is equity in the bill; and 2d. Whether the matter of that equity is denied by the answer. It is no equity that the complainant has an off-set at law to the defendants' action at law against him. Nor is it any matter of equity that the complainant has a claim for unliquidated damages, for breach of contract, against these defendants which could not be set off at law, unless it be accompanied by an allegation of the insolvency of these defendants, or some other impediment to the complainant's maintaining an action at law for such unliquidated damages; neither of which is averred in the bill. If there be any equity in the bill, it grows out of the true nature

[1] [Reported by Hon. William Cranch, Chief Judge.]

of the contract between the parties. Apparently it is a single bill acknowledging an absolute debt under hand and seal. According to the allegations of the bill, the debt is admitted, but it is said that it was not intended to be paid in the ordinary mode, by money, but by services, and that therefore it is inequitable in the defendants to avail themselves of the legal advantage which the form of the instrument has given them to enforce payment in money, the complainant having been always ready to perform the services which might be required.

The form of the instrument is certainly such as to throw the burden of proof upon the complainant to show that the contract was different from that which it purports to be. Neither fraud, nor imposition, nor mistake is alleged. The bill avers that the single bill for $766.65, was executed and delivered by the complainant, to the said Turners, "upon the express understanding that the said Turners were to give him all their law business;" "and that he should never be called upon to pay the said note, but that the whole amount was to be taken out in professional services; and expressly charges that the said Josiah did, for himself, and in the name of the said firm, proffer and make those terms." That "the Turners did not employ him in all their law business, as agreed as aforesaid," "although he was ready and willing to transact any that they offered to him." In the answer of J. & P. Turner, they deny that they or either of them, at the time of taking the note, or at any time thereafter, ever did agree to take it all out in law, unconditionally. They deny that it was executed and delivered to Josiah Turner, with any express agreement that the complainant never was to pay the same, or that he was never to be called on for payment thereof, as charged in the complainant's bill; but they admit that Josiah Turner said, that, if he would come to St. Mary's to reside, he would give him all his business, with that also of the firm of Josiah Turner & Co.; and that, in such case, the payment of the note would come easy to him; and that the greater part of it, on such conditions, would be taken out in law; and promised, at the same time, that if the complainant would determine on it then, this defendant would set him to all the cases of the firm; and might have said, "provided the complainant came to St. Mary's to reside, and took charge of their business, that he might never be called on for payment." The defendant Josiah also denies, that, at the time of taking the note, or at any time since, he promised the complainant to give him the individual and private law business of Philip. And the defendants aver that the whole of the said conversations and conditional promises grew out of the complainant's stating, at the time they were about to take his note, that he thought of coming to St. Mary's to reside,

which conditions were never complied with by the complainant.

It is evident, then, from the bill and answer, that, at the time the single bill was given, it was expected and understood, by both parties, that the whole amount might be satisfied by the services of the complainant; and that such services, as far as they should be actually rendered, should be set off against the obligation. Services, to an indefinite extent, the value of which is not ascertained, are admitted to have been performed, and it is not denied that the complainant was always ready and willing to perform all that should be required of him. The complainant, then, has a right, under the original contract, to have the value of those services ascertained and set off against the bill; and if it shall appear, upon final hearing, that the promise to give him the whole law business of the firm was not upon a condition not performed by the complainant, and that he was always ready to give his services and that the business has been given to another, it may possibly happen that equity will relieve him entirely from the obligation. We think, therefore, that the injunction ought to be continued until final hearing.